(No. 23391.—

THE LINCOLN-LANSING DRAINAGE DISTRICT, Defendant in Error, *vs.* THOMAS STONE, Highway Commissioner, Plaintiff in Error.

*Opinion filed June 10, 1936.*

ROBERT A. MEIER, JR., (CHESTER D. KERN, and C. E. STENNING, of counsel,) for plaintiff in error.

ROBERT E. DOWNS, (EDWARD T. HOWE, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

On July 7, 1926, the county court of Cook county entered a judgment confirming the commissioner's roll of assessments of benefits and damages (hereinafter called assessment roll) of the Lincoln-Lansing Drainage District (hereinafter called the drainage district) against the town of Bloom for benefits to the roads of the town in the sum of $2380.32, and a further assessment for the annual amount of benefits of $50 for keeping such roads in repair. The county court ordered the assessment of benefits to be paid in ten annual installments and to draw interest at the rate of six per cent, as provided by the statute. (Ill. State Bar Stat. 1935, chap. 42, sec. 26, p. 1295.) The commis-

sioner of highways of the town never paid any part of the assessment for benefits or for repairs but refused so to do. On July 13, 1931, the drainage district filed in the circuit court of Cook county a petition for *mandamus* against such commissioner of highways praying that he be required to have levied a tax to pay such drainage assessments. Several pleas were filed by the respondent, but it is necessary to notice only those presenting issues for consideration raised here by the assignment of errors.

The second part of the third plea stated, that since the date of the entry of the judgment of confirmation the State of Illinois and the county of Cook had taken from the town of Bloom and out of the jurisdiction of the respondent certain of the roads in the town and the respondent was no longer authorized to levy taxes therefor. The fourth plea stated the statute did not require the respondent to levy general taxes against the property of the town to be expended upon roads not maintained by the respondent. The fifth plea is a general denial of the plaintiff's right to maintain the petition.

The cause was continued at different intervals, on the motion of the defendant, until July 5, 1933. On that day evidence was heard on behalf of both the drainage district and the respondent, and the matter was continued for further hearing until July 10. On that date an order was entered continuing the cause until September 19. The respondent's attorney was not present on that day, and the cause was thereupon continued until September 20. The parties were then all present, and the cause was continued, upon the respondent's motion, until September 25. On that day the defendant again made a motion for continuance in order to procure certain evidence, hereinafter referred to in his motion to set aside the judgment. The court denied the motion and entered judgment granting the writ of *mandamus* as prayed. On October 10, 1933, the respondent made a motion to vacate the judgment in *mandamus*. In

support thereof he set up that he desired to introduce the testimony of one Arnold, an engineer in the employ of the Division of Highways of the State, or by stipulation, an exhibit showing and setting forth the various dates on which the county of Cook had taken preliminary steps incident to the process of taking over for control certain roads within the town, and that the testimony of Arnold would further show the time when certain roads formerly under the jurisdiction of the commissioner of highways of the town were taken over by the State and county. The court denied this motion. The respondent has appealed from the judgment granting the writ and from the order denying his motion to vacate the judgment.

On the trial of the cause Glen R. Williams, a civil engineer who had been engineer for the district at the time of its organization, testified for the respondent that at the time of the organization of the district there were 31.25 miles, and on an acreage basis 148 acres, of roads within the town of Bloom embraced in the drainage district; that subsequent to the organization of the district 23.75 miles, amounting on an acreage basis to 127 acres, of these roads had been taken over by the State of Illinois and Cook county, leaving of the original roads benefited on which the assessments were made, 7½ miles, or 21 acres, in the town of Bloom. No evidence whatever was offered to contradict this testimony.

The respondent contends that because of the refusal of the court to hear further evidence on September 25, 1933, and to allow the respondent's motion made on October 10, 1933, to vacate the judgment awarding the writ, he was not afforded due process of law. In the view we take of the case the facts offered to be proved by the witness Arnold were wholly immaterial. Without conceding that the testimony of the witness Williams was competent, the most that can be said of the testimony of Arnold was that it was cumulative to that of Williams.

The record shows the defendant was given a reasonable opportunity to present any and all competent evidence. Many definitions have been given of what constitutes due process of law. Here there was a judicial proceeding. The defendant was served with process. He had an opportunity to file, and did file, his pleadings, and from the time that evidence was heard, on July 5, 1933, until September 25, 1933, a period of substantially two and one-half months had intervened in which the defendant could have arranged to present further evidence if he had been diligent. An adequate opportunity to be heard was given him. It is necessary in order to constitute due process of law within the provisions of our State and Federal constitutions, that orderly proceedings according to established rules which do not violate fundamental rights should be observed, (*Reif* v. *Barrett,* 355 Ill. 104, 120,) but where the person affected has due and sufficient notice and an adequate opportunity to present his defense the constitutional requirements of due process of law are met. (*Public Utilities Com.* v. *Chicago and West Towns Railway Co.* 275 Ill. 555, 570, 571; *Flannery* v. *People,* 225 id. 62, 72; *Holmes* v. *Conway,* 241 U. S. 624, 60 L. ed. 1211.) The respondent was afforded due process of law.

The drainage district was organized under the Levee act. (Ill. State Bar Stat. 1935, chap. 42, pp. 1288-1314.) The respondent contends the judgment confirming the assessment roll did not, as against the town of Bloom, conform to the provisions of section 31 of article 4 of our State constitution or with the provisions of section 17 of the Levee act. This issue tendered is based upon the fact that the assessment roll does not describe any roads or specify any road by name, mileage or benefits, but designates 148 acres benefited on which the town is assessed.

It is argued that while section 31 of article 4 authorized the corporate authorities of drainage districts to construct, maintain and repair the drains thereof by special assess-

ments upon the property benefited thereby, section 17 of the Levee act requires the drainage commissioners to include in the assessment roll all highways to be affected, the amount of benefits assessed against, and damages, if any, accruing to, such highways, and to make an assessment of the "annual amount" of benefits which each tract will sustain. The respondent is not in a position to raise the question. When the order confirming the assessments was introduced in evidence, the only objection made was that the drainage district "is without authority to make assessments against another body corporate and politic." The county court had jurisdiction of the subject matter of, and the parties to, the drainage proceeding and authority to pronounce judgment therein. The question now presented was not there raised and therefore cannot be urged here (*Bittner* v. *Field*, 354 Ill. 215,) even though the question be a constitutional one. *Phelps* v. *Board of Appeals*, 325 Ill. 625; *Lee Publishing Co.* v. *County of St. Clair*, 341 id. 257.

The respondent urges that the assessments against the town of Bloom did not become effective upon their confirmation. In our opinion the crux of the whole case is the decision of this issue. Neither party has favored us with a case in point decided in any court of last resort upon this proposition. In our judgment sections 26 and 26½ of chapter 42 (Ill. State Bar Stat. 1935, at p. 1295,) definitely determine the controversy. Section 26 provides: "At the time of confirming such assessments, it shall be competent for the court to order the assessment of benefits to be paid in installments of such amounts, and at such times as will be convenient for the accomplishment of proposed work or payment of bonds that may be issued; otherwise the whole amount of such assessment shall be payable immediately upon such confirmation. The assessments or installments thereof shall draw interest at the rate of six per cent per annum from the time of confirmation until paid; but if any owner elects, he may pay the whole amount

of the assessments, and interest, if any, accrued against his land, before it becomes due. * * · * Said assessments shall be a lien upon the lands assessed as other taxes, and such lien shall continue until said assessments are paid," etc. Substantially the same provisions, except as to the division of the assessment into installments, are found in section 26½, pertaining to the assessment and payment of annual benefits. We must give effect to the language employed in section 26, that unless the court orders the assessment payable in installments it shall be payable immediately upon confirmation of the assessment roll, and the phrase "said assessments shall be a lien upon the lands assessed as other taxes, and such lien shall continue until such assessments are paid" must be given a normal meaning. Obviously, it was intended by the legislature that if the assessment was divided into installments, each installment should immediately be a lien upon privately owned property, payable as the installments matured, otherwise the whole assessment was payable forthwith.

The cases of *Big Lake Special Drainage District* v. *Commissioners of Highways,* 199 Ill. 132, and *People* v. *Whitesell,* 262 id. 387, relied upon by the respondent, do not sustain his position upon this issue. The fact that subsequent to the confirmation of the assessments the jurisdiction over certain of the highways in the town of Bloom and within the boundaries of the drainage district was transferred to the State and county by virtue of certain legislative enactments did not change the status of the drainage assessments. The amount of the assessment for benefits and the amount for annual repairs were definitely fixed and determined by the confirmation of the assessment roll by the order of the county court, which also gave the owners of the property assessed, or in the case of a municipality then in control of the property assessed, the option to pay in installments the assessment for benefits pursuant to the order of the county court. No intent is shown by the act to differ-

entiate as to payments for benefits to be made by towns. The assessments against the town of Bloom became absolute upon their confirmation by the county court with the duty imposed on the municipality, through its proper official, to pay such assessment immediately if payable as a whole or in installments as the same matured.

Section 55 of the Levee act states: "In case such assessment is made against any township in this State the commissioners of highways of such town shall cause the same to be levied and paid to said district in the manner provided by section 13, 14, 15 and 16 of an act entitled, 'An act in regard to roads and bridges in counties under township organization, and to repeal an act and parts of acts therein named'," etc. This provision of the statute in positive and unequivocal terms imposes an obligation on the commissioner of highways either to pay or take lawful steps to pay assessments against the town for benefits to the roads and for annual repairs by the levy of a tax for that purpose. He has no discretion in the premises. *Commissioners of Highways* v. *Big Four Drainage District*, 207 Ill. 17; *People* v. *Nortrup*, 232 id. 303; *People* v. *Wabash Railroad Co.* 256 id. 394, 398.

The judgment of the circuit court did not, as contended by the respondent, require him to pay any of the installments of benefits before maturity. By reason of the shift of jurisdiction of a large portion of the roads originally assessed for benefits and annual repairs subsequent to the confirmation of the assessments attacked here, a hardship is possibly worked on the respondent as the legal representative of the town, yet as between the drainage district and himself it is his duty to pay the assessments. *Mandamus* was an appropriate remedy to enforce the rights of the drainage district. *Commissioners of Highways* v. *Big Four Drainage District, supra; People* v. *Nortrup, supra.*

The judgment and order of the circuit court were in accordance with the law and are affirmed.

*Judgment and order affirmed.*